Jerome J. PARKS and Antenna Base
Systems, Inc., Plaintiffs,

v.

CAI WIRELESS SYSTEMS, INC. and
Philadelphia Choice Television,
Inc., Defendants.

Civil No. H–99–3105.

United States District Court,
D. Maryland.

Jan. 3, 2000.

Rignal W. Baldwin, Jr., Brassel and Baldwin, Annapolis, MD, for Antenna Base Systems, Inc.

James D. Mathias, Piper, Marbury, Rudnick & Wolfe, Baltimore, MD, Bruce T. Carton, Piper & Marbury, LLP, Washington, DC, James Harrison West, Piper & Marbury, Baltimore, MD, for CAI Wireless Systems, Inc., Philadelphia Choice Television, Inc.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiffs Jerome J. Parks ("Parks") and Antenna Base Systems, Inc. ("ABS") are seeking damages and other relief from defendants CAI Wireless Systems, Inc. ("CAI") and Philadelphia Choice Television, Inc. ("PCT"). This suit was originally filed in the Circuit Court for Anne Arundel County and was subsequently removed to this Court by defendants pursuant to 28 U.S.C. § 1441(a), *et seq.*, on the ground that diversity jurisdiction exists under 28 U.S.C. § 1332(a).

There has been no discovery in the case. Rather than answering the complaint, defendants have filed a motion to dismiss or in the alternative for summary judgment. Memoranda, exhibits and affidavits in support of and in opposition to the pending motion have been filed by the parties. No hearing is deemed necessary. *See* Local Rule 105.6. Since there has been no discovery undertaken as yet in this case, the parties in their memoranda have relied on affidavits and exhibits which they have submitted. Under the circumstances, the motion will be considered by the Court as one seeking summary judgment under Rule 56, F.R.Civ.P. rather than as one filed under Rule 12(b)(6), F.R.Civ.P. For the reasons stated herein, defendants' motion for summary judgment will be granted in part and denied in part.

# I

## Background Facts

On August 16, 1986, plaintiff ABS, a Maryland corporation, entered into a joint venture agreement (the "Agreement") with ACS Enterprises, Inc. ("ACS"), a Pennsylvania corporation. The joint venture was formed to provide satellite television service to residents, marina tenants and hotel guests at a real estate development in Annapolis, Maryland known as Chesapeake Harbour. Both ABS and ACS had a fifty-percent interest in the joint venture. Plaintiff Parks was the sole stockholder of plaintiff ABS.

Under Section 7 of the Agreement, ACS was to serve as the managing partner and was to be responsible for overseeing the daily operations of the joint venture. The dispute between the parties in this case arises under Section 9 of the Agreement, which provides in pertinent part as follows:

9. *Transfer of Interests.* Except as provided in this section, the interest of the parties in this joint venture of [*sic*] in the Agreement shall not be transferable, and any attempted assignment, sale or transfer shall be ineffective to transfer such interest and shall be null and void. If ABS desires to sell, assign or transfer all or any part of the interest in the business of the joint venture or in the Agreement, ACS shall have the right of first refusal to purchase the interest of ABS or to meet any bona fide offer from a third person to purchase ABS' interest herein ... If ACS desires to sell, assign or transfer its interest in the business of the joint venture or the Agreement, it is understood and agreed by ACS that ACS may not sell, assign or transfer its interest without also selling, transferring and assigning the interest of ABS on the same terms and conditions as ACS ...

On September 29, 1995, defendant CAI acquired ACS in a cash and stock transaction valued in excess of $230 million. ACS then became a wholly owned subsidiary of defendant CAI. In December of 1995, ACS merged into CAI and thereafter ceased to exist as a separate entity. The plaintiffs were not in 1995 advised of CAI's acquisition of ACS, nor of ACS' merger into CAI.[1] Defendant PCT is a wholly owned subsidiary of defendant CAI. PCT is the corporate successor to Apartment Cable Systems, Inc. ("Apartment Cable"),[2] a subsidiary of ACS prior to the merger of ACS with CAI. After that merger, Apartment Cable changed its name and later reincorporated under the name of Philadelphia Choice Television, Inc. (referred to herein as "PCT").[3]

By letter dated June 27, 1996, CAI requested that ABS pay its fifty-percent pro-rata portion of certain costs associated with the rebuilding and expansion of the Chesapeake Harbour service system. According to plaintiffs, this request for payment was the first time that plaintiff ABS had been put on notice of CAI's acquisition of ACS' partnership interest in the joint venture. Monthly partnership distributions had not been received by plaintiffs after April 3, 1996. Parks informed CAI that ABS would not forward to CAI the requested payments until it received tax returns and other financial information relating to CAI's acquisition of ACS' interest in the joint venture. No such information was ever provided by CAI, and accordingly ABS never forwarded the requested payments.

---

1. Defendants contend that plaintiffs were put on notice of the merger between ACS and CAI in September 1995 and again in November 1995. However, in his affidavit, plaintiff Parks asserts that he did not know of the merger until he received a letter dated June 27, 1996 from a representative of CAI.

2. Apartment Cable was the entity which provided service to Chesapeake Harbour. ACS had assigned its interests in the Agreement to Apartment Cable, which it owned.

3. Plaintiffs have alleged that defendant PCT is affiliated with defendant CAI and that PCT maintains an ownership interest in the joint venture.

On October 24, 1996, Christine Leister ("Leister"), the Chief Financial Officer of Jerome J. Parks Companies, Inc.,[4] wrote a letter to CAI at the request of plaintiff Parks. In that letter, Leister demanded that CAI continue to perform the obligations undertaken by ACS under the Agreement. The letter further stated:

ACS had the right to assign and transfer the Agreement dated August 16, 1986, between ACS Enterprises, Inc. and Antenna Base Systems, Inc. (ABS) to CAI, but CAI now has the responsibility to perform the obligations previously undertaken by ACS. There was a discussion ... between [CAI] and myself regarding the possible purchase of the ABS asset ... We would entertain a reasonable offer on this frontier.

Thereafter, there were discussions between Parks and George Parise, a Senior Vice President of CAI, relating to CAI's acquisition of ACS and its possible purchase of ABS. According to Parks, Parise offered on behalf of CAI "to purchase the ABS portion of ACS." Parks sought financial information which would permit him to determine what would be an appropriate sales price of ABS. However, no agreement was ever reached, nor did Parks receive payments from CAI or PCT as a purported partner of ABS.[5] The financial information requested by Parks was never received.

This civil action was filed in the Circuit Court for Anne Arundel County on August 2, 1999. Compensatory damages, a declaratory judgment, an accounting and other relief are sought.

## II

### *Plaintiffs' Claims*

In Count I of the complaint, plaintiffs have asserted a claim of constructive fraud. Plaintiffs allege that defendants, as successors-in-interest to ACS, breached their fiduciary duty to plaintiffs by ignoring the partnership obligations which defendants assumed after CAI acquired ACS.

Count II is based on a theory of negligence. It is alleged in Count II that defendants, as successors-in-interest to ACS, assumed contractual obligations and duties arising out of the Agreement and that their failure to satisfy these contractual duties and obligations amounted to negligence.

Count III asserts a claim of breach of contract. According to plaintiffs, defendants, as successors-in-interest of the obligations of ACS set forth in the Agreement, have refused to meet their obligations either for an accounting or for the payments to plaintiffs required by the terms and provisions of the Agreement. In particular, plaintiffs assert that defendants have failed to comply with the buy-out provision of the Agreement and that defendants are therefore liable to plaintiffs for a prorated payment of the ACS acquisition price.

Count IV alleges a claim of tortious interference with contractual relations. Plaintiffs allege that defendant CAI intentionally and improperly interfered with ACS' performance of the Agreement and induced ACS to breach the contractual obligations owed by it to the plaintiffs.

In Count V, plaintiffs seek declaratory relief, and in Count VI they request an accounting. In these Counts, plaintiffs ask the Court to determine and adjudicate the rights and liabilities of the parties with respect to the legal obligations of defendants as successors-in-interest to ACS and further ask that the Court order defendants to account for all sums representing revenue and expenditures since the date of their acquisition of ACS.

---

**4.** ABS is not affiliated with Jerome J. Parks Companies, Inc.

**5.** Certain checks were received by Parks in 1999 but were not cashed on advice of counsel.

## III

### *Summary Judgment Principles*

Since the parties in their memoranda have relied on affidavits and exhibits, the Court will treat defendants' pending motion as one seeking summary judgment under Rule 56. The principles to be applied by this Court in considering under Rule 56 a motion for summary judgment are well established. A party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Barwick*, 736 F.2d at 958. This burden is met by consideration of affidavits, exhibits, and other discovery materials. *Id.* Nevertheless, "[t]he facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion." *Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1004–05 (4th Cir.1987), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985)). Where facts are disputed, a court, in considering a defendant's motion for summary judgment, must accept the plaintiff's version of the events if supported by affidavits, exhibits or other documentary evidence. *See Magnuson v. Peak Technical Servs., Inc.*, 808 F.Supp. 500, 504 (E.D.Va.1992).

Applying these principles to the facts of record here, this Court has concluded that defendants' motion for summary judgment must be granted in part and denied in part.

## IV

### *Counts I and III*

As noted, Count I of the complaint is based on a theory of constructive fraud, and Count III asserts a claim of breach of contract. In determining in this diversity case whether there is sufficient evidence to support the claims asserted by plaintiffs in Count I and Count III of the complaint, the Court must apply Maryland law.

Pursuant to the Agreement of August 16, 1986, ABS and ACS became joint venturers. As a result of the merger of ACS into CAI in December 1995, CAI took the place of ACS as a partner in the joint venture formed by the Agreement. Under Maryland law, the assets of each party to a merger "transfer to, vest in and devolve on the successor without further act or deed." Md.Code Ann., Corps. & Ass'ns § 3–114(d)(1). The successor corporation after a merger remains liable for all the debts and obligations of the non-surviving corporation. § 3–114(e)(1).

A joint venture has been defined by the Maryland Court of Appeals as "[a]n association of two or more persons to carry out a single business enterprise for profit," and as "a partnership for a single transaction." *Herring v. Offutt*, 266 Md. 593, 596–97, 295 A.2d 876 (1972) (citations omitted). No person can become a member of a partnership without the consent of the other partners. *See* Md.Code Ann., Corps. & Ass'ns § 9–401(7). The partnership relationship is of a fiduciary character which carries with it the requirement of the utmost good faith and loyalty and the obligation of each member of the partnership to make full disclosure of all known information that is significant and material to the affairs or property of the partnership. *Allen v. Steinberg*, 244 Md. 119, 128,

223 A.2d 240 (1966). Where a partner is justified in believing that another partner has acted in a manner adverse or inconsistent with the reposing party's interest or welfare, constructive fraud may be found to arise from a violation of this belief. *Midler v. Shapiro,* 33 Md.App. 264, 268, 364 A.2d 99 (1976).

Applying these principles to the facts of record here, this Court concludes that defendants are not entitled to summary judgment either as to Count I or as to Count III of the complaint. There has been no discovery in this case, and no depositions have been submitted by the parties. Nevertheless, when the facts of record here are viewed in a light favorable to the plaintiffs, the Court is satisfied that there is sufficient evidence to permit the plaintiffs to go forward on their claim of constructive fraud alleged in Count I and on their claim of breach of contract alleged in Count III.

■ Evidence exists indicating that defendants breached the fiduciary duty owed by them to plaintiffs when they failed to disclose to plaintiffs material information relating to the merger of ACS into CAI. A reasonable jury could on the record here find that defendant CAI failed to exercise the utmost good faith and loyalty when it did not advise ACS' partner ABS that CAI had undertaken the obligations and responsibilities set forth in the Agreement, including the requirement that it act as managing partner of the partnership. Defendants contend that there is evidence indicating that plaintiffs knew or should have known of the merger. However, plaintiffs have pointed to contrary evidence. Disputed questions of material fact exist on the record here concerning whether defendants breached the fiduciary duty owed by them to plaintiffs.

Whether or not defendants breached the terms and provisions of the Agreement is likewise in sharp dispute. Defendants concede that under Section 9 of the Agreement, plaintiffs were entitled to have their joint venture interest purchased pursuant to the identical terms and conditions received by defendants if defendants, for consideration, assigned or transferred their rights and obligations under the Agreement. Defendants argue at some length that CAI's purchase of the stock of ACS in September of 1995 did not constitute an assignment or transfer of ACS' rights or obligations under the Agreement. However, it was the merger in December of 1995 which, under Maryland law, constituted the assignment to CAI of ACS' interest in the business of the joint venture.[6]

■ In arguing that a merger by operation of law should not be deemed to be an assignment in violation of a non-assignment clause like the one contained in Section 9 of the Agreement, defendants rely on decisions rendered by courts in other jurisdictions. Most of the cases cited by defendants involve the question of whether a sale of stock constitutes an assignment or transfer of a corporation's contractual rights or obligations. *See e.g., Branmar Theatre Co. v. Branmar, Inc.,* 264 A.2d 526, 528 (Del.Ch.1970). But here, the question is whether CAI assumed the rights and obligations of ACS under the Agreement not because of its purchase of stock but because of the later merger. From its review of applicable Maryland cases, this Court concludes that the merger which occurred here should, under Maryland law, be construed as being a transfer to defendant CAI of ACS' interest in the business of the joint venture.

In *Citizens Bank & Trust Co. v. Barlow Corp.,* 295 Md. 472, 474, 456 A.2d 1283 (1983), the Court of Appeals specifically addressed whether the merger of the tenant in a commercial lease into another corporation violated a non-assignment clause. During the term of the lease, the

6. The fact that the word "merger" is not contained in the complaint is of little consequence. Plaintiffs have alleged in the complaint that each defendant became a successor-in-interest of the obligations of ACS set forth in the Agreement.

Bank acquired and merged with the lessee. The lessee's landlord thereafter terminated the lease, claiming a violation of the non-assignment provision of the lease. The Court in *Citizens Bank* noted that the lessee and the Bank had merged pursuant to certain Maryland statutory provisions, whereby property of the extinguished lessee had passed to plaintiff "by force and effect of the statute." *Id.* at 478, 456 A.2d 1283. In ruling that the lease assignment entitled the landlord to terminate the lease because of a violation of the anti-assignment provision in the lease, the Court concluded that "there has been a change in ownership, and not merely a change in legal form of ownership. The leasehold interest in [landlord's] realty has been transferred to a different corporation which is controlled by different stockholders other than those who controlled [the extinguished lessee]." *Id.*

Similarly in this case, ACS' partnership interest has as a result of the merger been transferred to a different corporation which is controlled by different stockholders. There has accordingly been a change in the ownership of ABS' partner, and not merely a change in the legal form of the ownership. After the merger, ACS ceased to exist and CAI took its place in the joint venture. Evidence of record relied upon by the plaintiffs is sufficient to permit plaintiffs at this early stage of the case to go forward with their claim of breach of contract. Courts in other jurisdictions have similarly ruled that under appropriate circumstances a corporate merger can result in the violation of an anti-assignment provision contained in a contract. *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090, 1095 (6th Cir.1979); *Nicolas M. Salgo Assocs. v. Continental Ill. Properties*, 532 F.Supp. 279, 283 (D.D.C.1981).

Defendants argue that plaintiffs waived their right to assert that defendants breached the Agreement by admitting that ACS had the right to assign and transfer the contract to CAI. In support of this contention, defendants rely on the letter dated October 24, 1996, sent to CAI by Leister, the Chief Financial Officer of one of Parks' corporations.

 Under Maryland law, a "waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from the circumstances." *BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 643, 343 A.2d 529 (1975). Acts relied upon as constituting a waiver of provisions of a contract must be inconsistent with the intention to insist upon enforcing such provisions. *Id.*

 The issue of waiver cannot be decided as a matter of law in defendants' favor at this early stage of the case. It is disputed here whether it may be inferred from the circumstances that plaintiffs intentionally relinquished their right to assert a breach of contract claim against defendants. Parks has stated that he never acknowledged the right of CAI to continue as a substitute for ACS in its partnership with ABS. Summary judgment is seldom appropriate in cases in which particular states of mind are decisive as elements of a claim or defense. *Ballinger*, 815 F.2d at 1005 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)). Cases which turn on a finding of intent are not ordinarily appropriate for disposition by way of a motion for summary judgment, since resolution of such an issue depends on the credibility of the witnesses which can best be determined by the trier of fact after observation of the demeanor of the witnesses during direct and cross examination. *Morrison v. Nissan Ltd.*, 601 F.2d 139, 141 (4th Cir.1979).

Defendants also argue that all of plaintiffs' claims should be dismissed because they are barred by the applicable statute of limitations. According to defendants, plaintiff Parks was put on notice of the merger between ACS and CAI in early September 1995 and again in November

1995. Since Parks owned stock in ACS, defendants contend that he was advised of CAI's proposed acquisition of ACS when he received a notice of meeting and proxy statements relating to the prospective merger as well as CAI's annual report. Plaintiffs' claims in this case are subject to a three year limitations period. *See* Md. Code Ann. Cts. & Jud. Proc. § 5–101. Since this action was not filed until August 2, 1999, defendants maintain that all of plaintiffs' claims are barred by limitations.[7]

█ An applicable statute of limitations begins to run only "when the claimant knew or reasonably should have known of the wrong" at issue. *See Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677 (1981). Whether plaintiffs knew or reasonably should have known of the wrongs alleged in the complaint is sharply disputed. Parks maintains that when he received the letter dated June 27, 1996 from CAI, he did not even known who or what CAI was. According to Leister, Parks instructed her, after he received that letter, to find out who CAI was and why it was demanding money. On the record here, this Court is satisfied that there are disputed questions of material fact in the record here concerning whether plaintiffs knew in September 1995 or in November 1995 of the wrongs alleged in the complaint.

For all these reasons, the Court concludes that there are genuine disputed issues of material fact pertaining to the claims of constructive fraud and breach of contract alleged in the complaint. Accordingly, defendants are not entitled to the entry of summary judgment in their favor as to Counts I and III of the complaint.

## V

### *Counts II and IV*

█ In Count II, plaintiffs have asserted a claim of negligence, and in Count IV they seek a recovery for tortious interference with contractual relations. Generally, where the essence of a relationship is contractual and the essence of the claimed dereliction by a defendant is failure to perform the contract, a cause of action arising from such dereliction is not available in tort but is available only in contract. *Baird v. C & P Tel. Co. of Baltimore,* 208 Md. 245, 258–59, 117 A.2d 873 (1955). There is no cause of action for interference with a contract when suit is brought against a party to the contract. *Wilmington Trust Co. v. Clark,* 289 Md. 313, 329, 424 A.2d 744 (1981). It is widely recognized that one cannot be liable for tortious interference with his own contract. *Travelers Indem. Co. v. Merling,* 326 Md. 329, 343, 605 A.2d 83 (1992). The reasoning behind this rule is that a suit for breach of contract is the more appropriate remedy. *Wilmington Trust Co.,* at 329–30, 424 A.2d 744.

█ Applying those principles to the facts alleged in Counts II and IV of the complaint, this Court concludes that defendants are entitled to the entry of summary judgment in their favor as to both Count II and Count IV. In Count II, plaintiffs have alleged that defendants' failure to satisfy the contractual duties and obligations imposed by the Agreement constituted negligence. Under the circumstances here, this claim is not maintainable under Maryland law. As the Court of Appeals of Maryland held in *Baird,* a cause of action sounding in tort is not permitted where the essence of the claimed injury is defendant's failure to perform the contract. *Baird,* 208 Md. at 258–59, 117 A.2d 873. The appropriate cause of action under such circumstances is a claim for breach of contract. *Id.* Accordingly, plaintiffs may not go forward with the claim asserted by them in Count II.

**7.** The parties have entered into an agreement tolling the statute of limitations from June 24, 1999 until August 1, 1999, which was a Sunday. This suit was filed on Monday, August 2, 1999.

Plaintiffs' claim of tortious interference with contractual relations alleged in Count IV of the complaint is based upon the assertion that defendant CAI improperly induced ACS to not perform its obligations under the Agreement. However, as disclosed by the record here, defendant CAI assumed the obligations and duties of ACS under the Agreement after ACS was merged into CAI. Under Maryland law, the surviving corporation after a merger is liable for all the debts and obligations of the non-surviving corporation. Accordingly, the failure of ACS to perform its obligations under the Agreement must be treated here as the failure of defendant CAI to perform those obligations. Since defendant CAI cannot be deemed to have induced itself to breach the Agreement, the appropriate remedy under the circumstances of this case is a suit for breach of contract. *See Wilmington Trust Co.*, 289 Md. at 329–30, 424 A.2d 744. Accordingly, plaintiffs also may not go forward with the claim asserted by them in Count IV of the complaint.

### VI

#### *Conclusion*

In sum, for all the reasons stated, defendants' pending motion, treated herein as a motion for summary judgment, will be granted in part and denied in part. Defendants are entitled to the entry of summary judgment in their favor as to Counts II and IV of the complaint. Defendants' motion for summary judgment will be denied as to the remaining Counts of the complaint.[8]

Accordingly, it is this 3rd day of January, 2000 by the United States District Court for the District of Maryland,

**ORDERED:**

1. That defendants' motion to dismiss or in the alternative for summary

---

8. Plaintiffs' claims for declaratory relief and an accounting in Counts V and VI of the complaint are based essentially on the claim of breach of contract asserted in Count III.

judgment, treated herein as a motion for summary judgment, is hereby granted in part and denied in part;

2. That summary judgment in favor of defendants is hereby entered as to Counts II and IV of the complaint; and

3. That defendants' motion for summary judgment is hereby denied as to Counts I, III, V and VI of the complaint.

---

Since the Court has held that Count III is maintainable, defendants are not entitled to the entry of summary judgment as to Counts V and VI of the complaint.