[839 NYS2d 476]

Cᴇʟʟᴜʟᴀʀ Tᴇʟᴇᴘʜᴏɴᴇ Cᴏᴍᴘᴀɴʏ et al., Respondents, v 210 Eᴀsᴛ 86ᴛʜ Sᴛʀᴇᴇᴛ Cᴏʀᴘ., Appellant.

First Department, June 28, 2007

## APPEARANCES OF COUNSEL

*Kaufman Friedman Plotnicki & Grun, LLP*, New York City (*Howard Grun* of counsel), for appellant.

*Drinker Biddle & Reath, LLP*, Florham Park, New Jersey (*Michael E. Blaine* of counsel), and *Drinker Biddle & Reath, LLP*, New York City (*Andrew B. Joseph* of counsel), for respondents.

## OPINION OF THE COURT

CATTERSON, J.

In this action the plaintiff commercial tenant seeks a declaration that the defendant landlord did not validly cancel its lease. We conclude, however, that the lease was validly canceled and, accordingly, that the defendant is entitled to summary judgment.

In or about December 1997, the plaintiff Cellular Telephone Company (hereinafter referred to as Cellular) entered into a lease with the defendant 210 East 86th Street Corp. (hereinafter referred to as the Owner), owner of the premises. Paragraph 49.1 (a) of the lease states:

> "Tenant shall not (i) assign or otherwise transfer this Lease or the term or estate hereby granted or (ii) sublet the Premises or any part thereof or allow the same to be used or occupied by others or in violation of any of the provisions of this Lease, without, in each instance, obtaining the prior written consent of Owner which such consent may be withheld for any reason (whether reasonable, unreasonable or arbitrary) or for no reason. For purposes of this Article 49, the transfer or other disposition of in excess of twenty-five (25%) percent of the issued and outstanding capital stock of Tenant or any corporate tenant or subtenant, or the transfer of in excess of twenty-five (25%) percent of the total interest in any other entity (partnership or otherwise) which is Tenant or subtenant, however accomplished, whether in a single transaction or in a series of related or unrelated transactions, shall be

deemed an assignment of this Lease or such sub-lease, as the case may be."

However, paragraph 49.1 (b) sets out an exception to the need for the Owner's consent, stating that an assignment of the lease to an "affiliate, parent or successor of the Tenant," may be made without the Owner's consent.

Paragraph 49.5 of the lease provides the Owner with the right to cancel the lease in the event of notice to the Owner of subletting or assignment, stating, inter alia, that:

"In the case of an assignment or subletting of the entire Premises, within thirty days after receipt of the aforesaid notice, Owner may notify Tenant that Owner elects (a) to cancel this Lease, in which event such cancellation shall become effective on the date set forth in Tenant's notice as the proposed commencement date of the proposed assignment or subletting, with the same force and effect as if said date were the expiration date of the Lease, or (b) to require Tenant to assign this Lease to Owner or sublet to Owner the entire Premises effective from the date set forth in Tenant's notice . . . . If Owner fails to exercise the option to terminate this Lease, to accept an assignment of this Lease or enter into the sublease as provided in this Article, then Owner shall not unreasonably withhold Owner's consent to the assignment of this Lease or subletting of the entire Premises in accordance with the terms set forth in the notice to Owner and subject to the terms and conditions set forth in this Article."

Prior to October 26, 2004, Cellular was a New York general partnership, whose equal partners were Cellular Systems, Inc. (hereinafter referred to as CSI) and LIN Cellular Communications Corp. (hereinafter referred to as LIN Corporation). In addition to owning 50% of Cellular directly, LIN Corporation owned 96.671% of CSI, with the remaining percentage owned by private individuals. LIN Corporation was, in turn, a wholly owned subsidiary of LIN Broadcasting Corporation, which itself was a wholly owned subsidiary of AT & T Wireless Services (hereinafter referred to as AT & T).

The Two Transactions at Issue

First, on October 26, 2004, Cingular Wireless LLC (hereinafter referred to as Cingular) acquired all of the stock of AT & T, which continued in existence under the name New Cingular Wireless Services, Inc.

Second, through a series of intracorporate transactions, on or about October 27, 2004, LIN Corporation acquired 100% of Cellular, and Cellular ceased to exist by operation of law, as it now had only one partner. Thus, LIN Corporation became the tenant. LIN Corporation then merged into an affiliated entity owned by LIN Broadcasting, LLC (formally wholly owned by AT & T—presumably wholly owned by Cingular after the purchase of AT & T), which became LIN Cellular Communications, LLC. Since then, LIN Cellular Communications, LLC has merged into New Cingular Wireless PCS, on or about December 31, 2004, making the present tenant New Cingular Wireless PCS.

On November 23, 2004, the defendant Owner sent a "Notice of Landlord's Election to Cancel Lease."

The Instant Action

After the Owner commenced a holdover proceeding in Civil Court, Cellular commenced this action, seeking a declaration that the lease had not been validly cancelled, and for removal and consolidation of the Civil Court proceeding with this action. The Owner answered, asserting two counterclaims, (1) seeking a declaratory judgment that an assignment of the lease occurred and that the plaintiffs have held over without the Owner's consent, and (2) a judgment of ejectment compelling the plaintiffs to vacate the premises. The Owner moved to dismiss the complaint, which was denied on April 15, 2006. The Owner then moved, and Cellular cross-moved, for summary judgment.

The Owner argued that the purchase of AT & T by Cingular constituted an assignment of the lease and triggered the right to cancel the lease. The Owner also argued that the second transaction, whereby LIN Corporation became successor to Cellular by operation of law, and LIN Corporation's merger on October 27, 2004, while apparently intracorporate transactions, nevertheless constituted an assignment, again triggering the right to cancel the lease, as such right is not dependent on whether the assignment does or does not require owner consent.

The motion court essentially held that the purchase of AT & T by Cingular was not a transfer of the lease as the stock sale did not involve Cellular's stock, but only the stock of the parent, AT & T. As the lease states, it must be 25% of stock "which is Tenant," and AT & T was not the tenant. We agree with that holding. However, while the motion court found that the second series of transactions was a transfer or assignment of the lease, which plaintiffs do not contest, the motion court also held that

these assignments or mergers did not trigger the right to cancel the lease because such right only arises from transactions requiring landlord consent. This was error and requires reversal.

The Owner contends that the purchase of AT & T by Cingular constituted a transfer or assignment of the lease, and, since Cingular was not an affiliate of Cellular, the Owner's consent was necessary for such transfer or assignment. Thus, according to the Owner, pursuant to paragraph 49.5 of the lease, this event triggered the Owner's right to cancel the lease. The Owner relies on several foreign-jurisdiction cases to conclude that this was a transfer or assignment within the meaning of the lease. We find that these cases are unpersuasive, and the Owner's argument is contrary to the plain language of the lease.

The Owner cites *Citizens Bank & Trust Co. of Md. v Barlow Corp.* (295 Md 472, 456 A2d 1283 [1983]), in which the bank tenant merged with another institution and the court found that this constituted an assignment of the lease within the meaning of the nonassignment clause of the lease, and so required landlord approval. However, in that case, the lease specifically provided that the prohibition against assignment or subletting included assignment or subletting "by operation of law" (295 Md at 474, 456 A2d at 1283), and the governing Maryland statutes effectuated an assignment or transfer by operation of law. Here, there is no such language prohibiting an assignment "by operation of law." Also, and more importantly, in *Citizens Bank & Trust Co. of Md.*, the merger was between the tenant itself and another institution.

Here, the tenant Cellular was not involved in the series of transactions that resulted in the purchase of the parent. Moreover, the lease here expressly prohibits only

> "the transfer or other disposition of in excess of twenty-five (25%) percent of the issued and outstanding capital stock of *Tenant* or any corporate *tenant* or *subtenant*, or the transfer of in excess of twenty-five (25%) percent of the total interest in any other entity (partnership or otherwise) which is *Tenant* or *subtenant*, however accomplished" (emphasis added).

The Owner argues that the sale of AT & T stock "created an entirely new ownership structure, ousting the old stock holders

and managers, and placing ownership of all of the parent's subsidiary companies, including the tenant herein, under the umbrella of a new and completely separate corporate entity, i.e., Cingular." However, the immediate owners of Cellular's stock were CSI and LIN Corporation. In fact, LIN Corporation owned more than 96% of CSI itself, and the remaining small percentage was held by private individuals. This stock was not sold. As the motion court correctly noted, at the time of the sale of AT & T to Cingular, there were only two partners of Cellular, LIN Corporation and CSI, and "[t]here is no evidence in the record that any of [Cellular's] partnership interest was transferred in this transaction; rather, the stock sale in question was that of [AT & T], an indirect parent of [Cellular] who is not a party to the lease." (2006 NY Slip Op 30196[U], at *8.)

Given the vast web of interlocking ownership between many corporations, it would be unreasonable to read the lease provision as effecting an assignment or transfer whenever some far removed corporate parent is sold, especially when the lease expressly limits the prohibition to capital stock of "tenant" or other entity which is "tenant" (compare *White v Huber Drug Co.*, 190 Mich 212, 157 NW 60 [1916] [the tenant company itself transferred all of its property, including its rights under the lease, to a new company]).

Furthermore, *Parks v CAI Wireless Sys., Inc.* (85 F Supp 2d 549 [D Md 2000]), also cited by the Owner, essentially stands for the unremarkable proposition that the transfer of a corporation's ownership by merger with another corporate entity with new stockholders, constituted an assignment of the joint venture interests of the original corporation. In the instant case, Cellular's stock was not transferred, except in the broadest sense, by the sale of AT & T to Cingular, and none of the stock actually transferred in the sale constituted "the issued and outstanding capital stock of *Tenant* or any corporate *tenant* or *subtenant*, or the transfer of in excess of twenty-five (25%) percent of the total interest in any other entity (partnership or otherwise) which is *Tenant* or *subtenant*" (emphasis added).

The second series of transactions presents the problem requiring reversal. LIN Corporation became the tenant after the dissolution of Cellular. Then, LIN Corporation's merger with New Cingular Wireless PCS, while not requiring the Owner's *consent* to assign the lease, in that these transactions were among affiliates as defined in paragraph 49.1 (b), nevertheless triggered the

Owner's *right* to recapture the premises. This is all that is required to trigger paragraph 49.5.

The Owner correctly argues that the language of the lease at paragraph 49.5 is clear and unambiguous, and, notwithstanding anything in the lease to the contrary, it grants the Owner the right to cancel the lease upon a transfer or assignment. This right operates regardless of whether or not such transfer or assignment required the Owner's consent.

Contracts which are clear and unambiguous should be enforced according to their plain meaning (*see South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272 [2005]; *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]).

The plain language of paragraph 49.5 demonstrates that the Owner's right to recapture is independent of the tenant's right to assign the lease under paragraph 49.1 (b). The Owner correctly contends that depending on market conditions at the time of the intracorporate assignment of the lease, the Owner may or may not elect to recapture under paragraph 49.5 at its own discretion. Had Cellular wished to make the intracorporate right of assignment absolute, it could have so negotiated and drafted the appropriate language. The Court will not presume to rewrite the plain language of the lease that was negotiated between sophisticated business entities. "There is a presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties; such a presumption should apply with even greater force when the instrument is between sophisticated, counseled businessmen." (*Quantum Chem. Corp. v Reliance Group*, 180 AD2d 548, 548-549 [1st Dept 1992], *lv denied* 79 NY2d 760 [1992] [citations omitted].)

Accordingly, the order of the Supreme Court, New York County (Karen S. Smith, J.), entered September 26, 2006, which denied the defendant's motion for summary judgment and granted the plaintiffs' cross motion for summary judgment dismissing the defendant's counterclaims and affirmative defenses should be reversed, on the law, with costs, and defendant's motion for summary judgment granted and plaintiffs' cross motion denied and a declaration issued in defendant's favor that the lease was validly canceled.

Saxe, J.P., Nardelli, Gonzalez and Sweeny, JJ., concur.

Order, Supreme Court, New York County, entered September 26, 2006, reversed, on the law, with costs, defendant's motion

for summary judgment granted, plaintiffs' cross motion for summary judgment denied and a declaration issued in defendant's favor that the lease was validly canceled.