FIRST TECHNOLOGY CAPITAL,
INC., Plaintiff,

v.

AIRBORNE, INC. d/b/a Firstflight,
Defendant.

6:15–CV–06063 EAW

United States District Court,
W.D. New York.

Signed 08/02/2017

Michael J. Gartland, DelCotto Law Group PLLC, Lexington, KY, for Plaintiff.

W. Bradley Hunt, Neil Joseph Smith, Mackenzie Hughes LLP, Syracuse, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

## INTRODUCTION

Plaintiff First Technology Capital, Inc., ("Plaintiff") brings this action against Airborne, Inc. d/b/a Firstflight ("Defendant"), for damages allegedly sustained when Defendant breached a contract to purchase an aircraft from Plaintiff. (Dkt. 1). On April 2, 2014, Plaintiff and Defendant entered into a contract for the sale of a 1999 McDonnell Douglas DC–9–83 aircraft carrying the tail number N973TW and the serial number 53623 ("the Aircraft"). (*See id.* at ¶¶ 8, 30). Incorporated as part of that contract was a Technical Summary Report with information/specifications pertaining to a McDonnell Douglas MD–83 that, as it turns out, was not the Aircraft. (*Id.* at ¶ 28). Ultimately, Defendant rejected the Aircraft because it did not comply with the information/specifications con-

tained in the Technical Summary Report. (*Id.* at ¶ 37)..

Plaintiff contends that while both parties believed that the Technical Summary Report related to the Aircraft at the time the contract was executed (*id.* at ¶¶ 28, 31), Defendant later relied upon the failure of the Aircraft to comply with those specifications as an excuse to back out of the deal (*id.* at ¶¶ 35–37). In other words, according to Plaintiff, Defendant had other reasons for not wanting to proceed with the transaction, but relied upon the failure to comply with the technical terms of the contract to renege on the deal.

Presently before the Court is Defendant's motion for judgment on the pleadings (Dkt. 30), Defendant's motion to amend/correct its answer (Dkt. 39), Plaintiff's motion for summary judgment to dismiss Defendant's "perfect tender" defense (Dkt. 47), and Plaintiff's motion for summary judgment to reform the contract (Dkt. 57). For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted, and all other pending motions are denied as moot.

### BACKGROUND

The following facts are drawn from the complaint (Dkt. 1) unless otherwise stated. On or about September 30, 2010, Plaintiff acquired full ownership interest in the Dougherty Air XVIII Investment Trust, which was controlled by Dougherty Air Trustee, LLC ("Dougherty") as trustee. (*Id.* at ¶ 6). At approximately the same time, Dougherty obtained the Aircraft. (*Id.* at ¶ 8). The Aircraft was acquired on a lease with American Airlines ("American"), but, in 2012, the lease was amended and was scheduled to terminate on May 1, 2014. (*Id.* at ¶¶ 8, 10–11). In March of 2014, Dougherty entered into negotiations with Tailwind Capital, LLC ("Tailwind") to sell the Aircraft (*id.* at ¶ 18); Tailwind was acting as Defendant's "broker/agent" during these discussions (*id.*). Defendant was interested in purchasing the Aircraft in order to immediately sell it to an undisclosed Middle Eastern airline. (*Id.* at ¶ 34).

On March 28, 2014, Alan Weingart ("Weingart"), a Senior Vice President of Dougherty, sent two emails with various PDF documents containing the specifications for the Aircraft to Bryson Monteleone ("Monteleone"), an "ISTAT" certified appraiser with Tailwind. (*Id.* at ¶ 19). On April 1, 2014, Weingart sent an email to Monteleone containing a form "Offer to Purchase" with blank spaces appearing in the "Sale Price" and "Sale Terms" sections ("Initial Offer"). (*Id.* at ¶ 20; Dkt. 1–1 at 2).

On April 2, 2014, Benjamin Dow ("Dow"), Defendant's Director of Aircraft Sales, executed the Initial Offer with alterations ("Purchase Contract"). (Dkt. 1 at ¶¶ 25–26; Dkt. 1–2). These changes included a modification to the "Sales Terms" section and the attachment of the Technical Summary Report. In the Initial Offer, the final provision in the "Sale Terms" section provided that the "Aircraft is sold 'as is/where is' with no representations or warranties of any kind except for the warranty of title." (Dkt. 1–1 at 2). However, in the Purchase Contract, the provision continues with: "per the specification attached (Annex I) provided by [Dougherty]. 'As is/where is' condition includes all engines, APU, Gear and components listed here within in [sic] the specifications; *no deviation from the specification, removal or exchange of parts will be acceptable.*" (Dkt. 1–2 at 2 (emphasis added)). A Technical Summary Report was attached as "Annex I" to the Purchase Contract, and was labeled as the "Aircraft Specification." (*Id.* at 6–12).

That same day, Weingart, on behalf of Dougherty, executed the Purchase Contract. (Dkt. 1–3 at 6). Weingart confirmed

that the Purchase Contract had been executed in an email correspondence, and also indicated that he would "endeavor to get [American] to confirm the items on the Technical [S]ummary Report that is dated December 3, 2013." (Dkt. 1–3 at 2).

Within the next two days, Weingart sent an email to Monteleone at Tailwind containing a summary of the *actual specifications* for the Aircraft. (Dkt. 1–4 at 2–6; Dkt. 1 at ¶ 32). Less than a week later, on April 9, 2014, Tailwind informed Weingart that the "bridging costs"[1] involved in preparing and conditioning the Aircraft for subsequent resale were too great to proceed with the instant transaction. (Dkt. 1 at ¶ 35). The next day (April 10, 2014), Tailwind confirmed that Defendant would not purchase the Aircraft. (*Id.* at ¶ 36).

On April 15, 2014, Dow transmitted an email to Monteleone, which noticed his reasons for rejecting the Aircraft, and primary among them was the " 'incorrect and inaccurate technical specification' " attached to the Purchase Contract. (*Id.* at ¶ 37). Dow claimed that the Technical Summary Report had been provided by Plaintiff, when in fact Defendant or its broker/agent had attached it to the Purchase Contract. (*Id.* at ¶¶ 37, 38). Plaintiff has since sold the Aircraft to another buyer for $575,000, which is $1,575,000 less than the amount Defendant had contracted to pay. (*Id.* at ¶ 39).

## PROCEDURAL HISTORY

On February 5, 2015, Plaintiff commenced this action alleging that Defendant had breached its obligations under the Purchase Contract by rejecting the Aircraft. (Dkt. 1). On March 2, 2015, Defendant timely answered the complaint, denying all material allegations and raising various affirmative defenses. (Dkt. 9). On

July 6, 2015, Defendant filed the present motion for judgment on the pleadings, claiming that it had acted properly by rejecting the Aircraft pursuant to the "perfect tender" rule, and, in any event, the Purchase Contract was voidable under the Impossibility Doctrine. (Dkt. 30). On August 3, 2015, Plaintiff requested that Defendant's motion be converted to a motion for summary judgment and opposed the motion, arguing that: (1) Plaintiff had waived the affirmative defense of Impossibility by failing to raise it in its answer and, in any event, such a defense was inapplicable; and (2) there was at least a genuine issue of material fact regarding whether Defendant had acted in good faith in rejecting the Aircraft. (Dkt. 37). On August 10, 2015, Defendant filed the present motion to amend/correct its answer, requesting permission to add the affirmative defense of Impossibility. (Dkt. 39). Plaintiff opposed this motion. (Dkt. 41).

On October 2, 2015, Plaintiff filed its first motion for summary judgment presently pending before the Court, requesting that Defendant's "perfect tender" defense be dismissed because, as a matter of law, Plaintiff acted in bad faith in rejecting the Aircraft. (Dkt. 47; Dkt. 47–17). Defendant opposed this motion. (Dkt. 52). On October 30, 2015, Plaintiff filed its second motion for summary judgment presently pending before the Court, requesting that the Purchase Contract be reformed to reflect the parties' intent. (Dkt. 57). Defendant opposed this motion as well. (Dkt. 61).

On March 8, 2016, the Court heard oral argument on all pending motions. (Dkt. 67). On August 31, 2016, Defendant apprised the Court that it had filed for Chapter 11 bankruptcy, and the matter was stayed pursuant to 11 U.S.C. § 362. (Dkt.

---

1. According to Plaintiff, "bridging costs" include "the costs involved with bringing the [subject] Aircraft's then-current condition up to the condition required by [Defendant]'s undisclosed Middle Eastern airline buyer...." (Dkt. 1 at ¶ 35; Dkt. 37 at 11).

68). On October 3, 2016, the Court was informed that the bankruptcy proceedings had terminated and it then notified the parties that the stay would be lifted unless it received objections by October 7, 2016. (Dkt. 69). The Court lifted the stay on October 10, 2016, after receiving no objections from the parties. (Dkt. 70).

## DISCUSSION

### I. Standard for Judgment on the Pleadings

 "Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F.Supp.2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F.Supp.3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727–28 (2d Cir. 2015)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### II. Plaintiff's Request to Convert to a Motion for Summary Judgment

#### A. Legal Standard

 The Court first addresses Plaintiff's request to convert Defendant's motion for judgment on the pleadings to a motion for summary judgment. "Generally, a motion for judgment on the pleadings must be based upon the pleadings, and not on additional evidence submitted by any party." *Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*, 861 F.Supp.2d 120, 127 (W.D.N.Y. 2012). Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *See, e.g., Sira v. Morton*, 380 F.3d 57, 66 (2d Cir. 2004).

 However, "the rule requires that the court give 'sufficient notice to an opposing party and an opportunity for that party to respond.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)). "Nevertheless, 'formal notice is not required where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Ligotti v. Provident Life & Cas. Ins. Co.*, 857 F.Supp.2d 307, 313 (W.D.N.Y. 2011) (quoting *Hernandez*, 582 F.3d at 307). "Although conversion to a summary judgment motion is necessary where a court elects to consider matters outside the pleadings, the decision whether to convert is a matter for the court's discretion." *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275, 278 (S.D.N.Y. 2006); *see Avgerinos v. Palmyra–Macedon Cent. Sch. Dist.*, 690 F.Supp.2d 115, 123 (W.D.N.Y. 2010) ("Federal courts have complete discretion to determine whether or not to accept submission of any material beyond the pleadings offered in conjunction with a motion to dismiss, and thus complete discretion in determining wheth-

er to convert the motion to one for summary judgment.").

■ "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotation and citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira*, 380 F.3d at 67 (quotation and citations omitted); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## B. New York Substantive Law Applies

■ A federal court sitting in diversity applies state substantive law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000).

■ Here, the Purchase Contract includes a choice-of-law clause providing that this "proposal and acceptance shall in all respects be governed by and construed in accordance with the laws of the State of New York." (Dkt. 1–2 at 3). Plaintiff has pled that it "is a corporation organized and existing under the laws of the State of New York," and that it maintains its principal place of business "at 236 Sing Sing Road, Horseheads, New York." (Dkt. 1 at ¶ 2). "Under New York law, these reasons are sufficient to enforce the [Purchase Contract]'s choice of [New York] law." *TransAtlantic Lines LLC v. Amergent Techs, LLC*, No. 16 Civ 3549 (PAE), 2017 WL 78511, at *4 n.6 (S.D.N.Y. Jan. 6, 2017) (noting that the agreement contained a choice of law provision favoring Connecticut law, and the plaintiff was organized and existed under Connecticut Law and maintained its principal place of business in Connecticut); *see Woodling v. Garrett Corp.*, 813 F.2d 543, 552 (2d Cir. 1987) ("Since Connecticut is the principal place of business of TG, the court properly honored the parties' contractual choice of Connecticut law with regard to matters of substance...."); *Follman v. World Fin. Network Nat'l Bank*, 721 F.Supp.2d 158, 161 (E.D.N.Y. 2010) ("[B]ecause [the] defendant's principal place of business is in Ohio, and [the] defendant's cardholder agreement instructs that Ohio law governs the agreement, its choice-of-law provision will be enforced."); *see also Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 366 (2d Cir. 2003) (stating that a New York choice of law provision "would be reasonable, and hence enforceable," if the plaintiff maintained its principal place of business in New York, "creating significant contacts to the state"). Thus, applying the choice-of-law rules of New York, the Court has determined that New York law applies.[2]

---

**2.** Defendant has not challenged Plaintiff's assertion that New York law applies. *See Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F.Supp.3d 379, 388 (S.D.N.Y. 2014) (determining that where the parties "have assumed that New York law governs, ... [t]his sort of 'implied consent is sufficient to establish the applicable choice of law'." (quoting *Barbagallo v. Marcum LLP*, 820 F.Supp.2d 429, 438 (E.D.N.Y. 2011))).

### C. Plaintiff's Request to Convert the Motion to Summary Judgment is Denied

Plaintiff's complaint alleges that Defendant breached the Purchase Contract, and Defendant's motion asserts that Plaintiff failed to tender the Aircraft pursuant to the express language of the Purchase Contract—in other words, Plaintiff failed to provide the item (the Aircraft) that was the subject of the Purchase Contract. In order to resolve that issue, the Court must construe the terms of the Purchase Contract in a manner consistent with the intent of the parties to ascertain the subject matter of the contract. *See DCMR v. Trident Precision Mfg.*, 317 F.Supp.2d 220, 224 (W.D.N.Y.), *aff'd sub nom. DCMR v. Trident Precision Mfg. Inc.*, 110 Fed.Appx. 205 (2d Cir. 2004). "In other words, there are pure issues of law before the court." *Levy v. Verizon Info. Servs., Inc.*, 498 F.Supp.2d 586, 595 n.8 (E.D.N.Y. 2007) (declining to convert a motion to dismiss to a motion for summary judgment); *see Tower Ins. Co. of N.Y. v. Zaroom*, 145 A.D.3d 556, 557, 44 N.Y.S.3d 32 (1st Dep't 2016) (stating that "the interpretation of a contract" is a "purely legal issue[ ]"); *Futia Realty Co. Inc. v. OLC Assocs. Ltd. P'ship*, 228 A.D.2d 913, 915 n.1, 644 N.Y.S.2d 420 (3d Dep't 1996) ("The interpretation of a written agreement is a legal issue for the court to resolve in the first instance.").

Plaintiff has attached the Initial Offer, the Purchase Contract, the Technical Summary Report, and the actual specifications related to the Aircraft to the complaint as exhibits. (Dkt. 1). In opposition to Defendant's motion, Plaintiff submitted: (1) two affidavits; (2) several email conversations; and (3) Defendant's Second Supplemental Response to Plaintiff's interrogatories. (Dkt. 37). Plaintiff requests that the Court consider this external evidence.[3]

In support of its motion, Defendant contends that it was entitled to reject the Aircraft because it did not comport with the terms of the Purchase Contract. Specifically, Defendant argues that the express terms of the fourth provision within the "Sale Terms" section of the contract required that the Aircraft maintain the specifications outlined in the incorporated Technical Summary Report, and that "no deviation from the specification" was a necessary condition to Plaintiff's performance. (Dkt. 30–1 at 10–13). Plaintiff fails to contest Defendant's assertion that the Aircraft does not have the same specifications as those outlined in the Technical Summary Report, and, in fact, admits as much in the complaint. (Dkt. 1 at ¶ 28). Instead, Plaintiff asserts other arguments in an attempt to defeat Defendant's motion.

Plaintiff argues that there is a genuine issue of material fact regarding whether Defendant reneged on its contractual obligations in bad faith. (Dkt. 37 at 18–22). "Under New York law, the covenant of good faith and fair dealing is implied in all contracts." *Kingsland v. Xerox*

---

**3.** The procedural posture of Plaintiff's request is unusual. In other words, it is Plaintiff's complaint on which Defendant moves for judgment based on the allegations contained therein. In opposition, Plaintiff seeks pursuant to Fed. R. Civ. P. 12(d), to go outside the pleading and rely upon external evidence, and yet then argues that once properly converted the Court should find disputed issues of material fact and deny judgment in favor of Defendant. While unusual, this is nonetheless a procedural position that is permitted by Fed. R. Civ. P. 12(d). *See Travelers Indem. Co. v. Joseph Davis Inc.*, No. 05-CV-870A, 2006 WL 3827430, at *3 (W.D.N.Y. Dec. 28, 2006); 5 C. Wright, A. Miller, et al., *Federal Practice and Procedure* Civil 3d. § 1366 (3d ed. 2017) ("Either the pleader or the moving party or both may bring the conversion provision into operation by submitting matter that is outside the challenged pleading, as courts in every circuit have recognized.").

Corp., 829 F.Supp.2d 194, 200 (W.D.N.Y. 2011). " 'New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.' " Int'l Rehab. Scis. Inc. v. Gov't Employees Ins. Co., No. 12 Civ 1225 (RJA), 2014 WL 6387276, at *2 (W.D.N.Y. Nov. 14, 2014) (quoting Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002)).

Here, any claim of bad faith is defeated by Plaintiff's own allegations in the complaint. Plaintiff alleges that Defendant believed the Technical Summary Report related to the Aircraft at the time the Purchase Contract was executed. (Dkt. 1 at ¶ 28 ("At the time that ... the Technical Summary Report [was attached] to the Offer to Purchase and [Defendant] ... executed said offer ... [Defendant] believed that the information/specifications contained in the Technical Summary Report related to the Aircraft."); see also id. at ¶ 43). Plaintiff now contends in support of its bad faith argument that Defendant attached this report to the Purchase Contract as an "escape hatch" to relieve Defendant of its obligations should the sale to the Middle Eastern airline go "awry" (Dkt. 37 at 21 n.11), but that argument is directly contradicted by its own allegations in the complaint. Thus, to the extent that Plaintiff seeks to convert Defendant's motion to one for summary judgment, and have this Court look beyond the complaint in Plaintiff's quest to raise issues of bad faith by Defendant, that argument is forestalled by Plaintiff's own pleading. See generally Bennett v. Fischer, No. 09 Civ 1236 (FJS)(DEP), 2012 WL 1085855, at *2 (N.D.N.Y. Jan. 9, 2012) ("Because [the] plaintiff's complaint is subject to dismissal on its face, however, I have chosen not to recommend a conversion of [the] defendants' motion."), report and recommendation adopted, No. 09 Civ 1236 (FJS)(DEP), 2012 WL 1037948 (N.D.N.Y. Mar. 27, 2012); Beres v. Thomson McKinnon Sec., Inc., No. 85 Civ 6674 (SWK), 1987 WL 16977, at *19 (S.D.N.Y. Sept. 10, 1987) ("If a complaint does not show on its face that the claim is barred, a litigant may go beyond the pleadings ... and convert the motion to dismiss into a Fed. R. Civ. P. 56 Motion for Summary Judgment.").

 Plaintiff's further assertion that Defendant has feigned concern for the specifications annexed in the Technical Summary Report and used those specifications as a belated excuse to back out of the deal—as evidenced by the fact that no such specifications were attached to the agreement between Defendant and the Middle Eastern purchaser (Dkt. 37 at 21)—similarly does not justify looking beyond the complaint. Defendant's motives for relying on the express contractual terms are not relevant to this Court's determination. The implied obligation of good faith and fair dealing "is in aid and furtherance of other terms of the agreement of the parties" and thus, an implied obligation cannot be invoked when to do so "would be inconsistent with other terms of the contractual relationship." Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). The fact that Defendant inserted additional language within the Purchase Contract to protect its own interests and then acted upon that language is perfectly proper. See Barbara v. MarineMax, Inc., No. 12 Civ 368 (ARR) (RER), 2013 WL 1952308, at *5 (E.D.N.Y. May 10, 2013) ("[A]lthough a covenant of good faith exists in every contract (whether expressed or implied), 'a court may not construe the covenant to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.' "

(quoting *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F.Supp.2d 395, 406 (E.D.N.Y. 2012))). Indeed, reliance upon contractual mandates requiring complete satisfaction of a delivery condition is not evidence of bad faith conduct. *See Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*, 567 F.Supp.2d 579, 592 (S.D.N.Y. 2008) (determining that language obligating the plaintiff to deliver the aircraft "in accordance with all of the delivery conditions contained in th[e] [a]greement and that [the defendant] ha[d] no obligation to purchase the [a]ircraft in the event such delivery conditions [were] not met" entitled the defendant to reject the aircraft if the plaintiff "failed to satisfy the delivery conditions in any way, no matter how insignificant").

In sum, the issues before the Court involve the legal interpretation of the express language in the contract, and can be resolved based on the allegations in the complaint. Plaintiff's allegations of bad faith do not change that analysis. Therefore, the Court declines Plaintiff's invitation to convert the pending motion for judgment on the pleadings to a summary judgment motion and will exclude from consideration the external materials attached to Plaintiff's opposition papers.

## III. Defendant's Motion for Judgment on the Pleadings Should be Granted

### A. The "Perfect Tender" Rule

■ Article 2 of the New York Uniform Commercial Code (the "UCC") governs a contract involving the sale of a good between merchants, such as an airplane. *Austrian Airlines Oesterreichische Luftverkehrs AG*, 567 F.Supp.2d at 592 (applying Article 2 of the UCC to the sale of an aircraft); *see Coastal Aviation, Inc. v. Commander Aircraft Co.*, 937 F.Supp. 1051, 1060 (S.D.N.Y. 1996) (same), *aff'd*, 108 F.3d 1369 (2d Cir. 1997). The UCC "recognizes the 'perfect tender' rule: 'the policy of requiring exact performance by the seller of his obligations as a condition to his right to require acceptance.'" *Fashionwear (PVT) Ltd. v. Regatta (U.S.A.) LLC.*, No. 03 Civ 5597 (JFK), 2006 WL 695256, at *3 (S.D.N.Y. Mar. 17, 2006) (quoting UCC § 2–106 cmt. 2); *see Austrian Airlines Oesterreichische Luftverkehrs AG*, 567 F.Supp.2d at 592 ("New York recognizes the 'perfect tender' rule."). "[I]f the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may ... reject the whole...." N.Y. U.C.C. Law § 2–601. A buyer may assert the perfect tender rule to terminate the contract when he has received non-conforming goods. *See, e.g., Fashionwear (PVT) Ltd.*, 2006 WL 695256, at *3; *Stinnes Interoil, Inc. v. Apex Oil Co.*, 604 F.Supp. 978, 980 (S.D.N.Y. 1985).

### B. The Purchase Contract is Unambiguous

■ At oral argument, Plaintiff posited a different argument than those already mentioned. After first asserting that the "Sale Terms" provision was ambiguous, counsel for Plaintiff reversed course and argued that it was, in fact, unambiguous and simply required that the Aircraft maintain the same "engines, APU, Gear and components listed ... in the specifications." (*See* Dkt. 1–2 at 2). However, the full provision states that the " '[a]s is/ where is' condition *includes* all engines, APU, Gear and components listed herewithin in the specifications; *no deviation from the specification, removal or exchange of parts will be acceptable*." (*Id.* (emphases added)).

■ Under New York law,
[a] contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agree-

ment] itself, and concerning which there is no reasonable basis for a difference of opinion. Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity.

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569–70, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002). "Whether a contract is ambiguous is a question of law for the court, determined by 'looking within the four corners of the document, not to outside sources.'" *Cascades, Inc. v. Experis Fin. US, LLC*, No. 12 Civ 851 (JTC), 2014 WL 3891630, at *5 (W.D.N.Y. Aug. 7, 2014) (quoting *Kass v. Kass*, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998)). " 'The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.' Thus, '[t]he best evidence of what parties to a written agreement intend is what they say in their writing.'" *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F.Supp.3d 352, 360 (S.D.N.Y. 2016) (quoting *Greenfield*, 98 N.Y.2d at 569, 750 N.Y.S.2d 565, 780 N.E.2d 166).

The instant provision uses the term "includes," indicating that the stated list of "engines, APU, Gear and components" is inclusive, not exclusive. *See Brooklyn Bridge Park Coal. v. Port Auth. of New York & New Jersey*, 951 F.Supp. 383, 389 (E.D.N.Y. 1997) (" 'Include' is properly understood as a term enlarging rather than limiting a definition."); *Empire Mut. Ins. Co. v. Applied Sys. Dev. Corp.*, 121 A.D.2d 956, 960, 505 N.Y.S.2d 607 (1st Dep't 1986) ("Subject to its contextual usage, the word 'include' is generally a term of enlargement and not of limitation, connoting an illustrative application of a general principle."). This interpretation is supported by the precise language employed, which provides that "no deviation from the specification ... will be acceptable." (Dkt. 1–2 at 2). This language reflects a definite written declaration of the parties' intent—the Aircraft needed to comply with the specifications of the Technical Summary Report attached as Annex I. This unambiguous language must be construed by its plain terms. *See Tucker Leasing Capital Corp. v. Marin Med. Mgmt., Inc.*, 833 F.Supp. 948, 956 (E.D.N.Y. 1993) ("Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement."); *Chem. Bank v. Meltzer*, 93 N.Y.2d 296, 303, 690 N.Y.S.2d 489, 712 N.E.2d 656 (1999) ("[A] court may not rewrite clear and unambiguous contracts"); *Daashur Assocs. v. Dec. Artists Apartment Corp.*, 226 A.D.2d 114, 115, 640 N.Y.S.2d 65 (1st Dep't 1996) ("The courts will not interfere between parties whose contract is clear.").

This conclusion is only further buttressed by the fact that both parties were engaged in an arms' length transaction and were represented by sophisticated businessmen; as such, they should be held to their bargain. *See Baldwin Tech. Co., Inc. v. Printers' Serv., Inc.*, No. 15 Civ 07152 (GBD), 2016 WL 354914, at *4 (S.D.N.Y. Jan. 27, 2016) ("New York courts are reluctant ... 'to rewrite the plain language of [contracts] negotiated between sophisticated business entities.'" (quoting *Cellular Tel. Co. v. 210 E. 86th St. Corp.*, 44 A.D.3d 77, 83, 839 N.Y.S.2d 476 (1st Dep't 2007))); *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990) ("Here, sophisticated businessmen reduced their negotiations to a clear, complete writing. ... By ignoring the plain language of the contract, [the] plaintiff effectively rewrites the bargain that was struck."); *Spaulding v. Benenati*, 57 N.Y.2d 418, 423, 456 N.Y.S.2d 733, 442 N.E.2d 1244 (1982) ("[W]e do not believe that the court should interfere in the voluntary agreement reached by sophisticated parties to a contract.").

Thus, the Court finds that the "Sales Terms" provision of the Purchase Contract unambiguously binds Plaintiff to the specifications listed in the Technical Summary Report—in other words, Plaintiff was required pursuant to the terms of the Purchase Contract to deliver an aircraft that met the specifications in the Technical Summary Report.

### C. The "Perfect Tender" Rule Applies to This Transaction

In *Austrian Airlines*, the plaintiff "concede[d] . . . that the [a]ircraft did not comply with the delivery conditions in many material respects as of March 31, 2004." *Austrian Airlines Oesterreichische Luftverkehrs AG*, 567 F.Supp.2d at 592. The Southern District of New York indicated that "[t]his typically would dispose of the matter because New York recognizes the 'perfect tender' rule." *Id.* While the court went on to discuss the plaintiff's argument that the defendant had, in any event, waived its right to enforce the contract— an argument not raised in the instant matter—it ultimately found this contention to be meritless and granted the defendant's motion for judgment of dismissal on partial findings. *Id.*

██ Here, Plaintiff expressly acknowledges in its complaint that the Technical Summary Report "contains information/specifications with respect to a McDonnell Douglas MD–83 that *is not* the Aircraft that is described on page 1 of the [Purchase Contract]." (Dkt. 1 at ¶ 28 (emphasis added)). For instance, the Time Since Last Shop Visit ("TSLSV") and the Cycles Since Last Shop Visit ("CSLSV") values for the left and right engines were both required to be zero in the Technical Summary Report. (Dkt. 1–3 at 10). However, the actual specifications for the Aircraft reflect entirely different TSLSV and CSLSV values for both engines. (Dkt. 1–4 at 5). Similarly, the Total Airframe Hours

in the Technical Summary Report were required to be 40,324:33 (Dkt. 1–3 at 9), but the actual hours for the Aircraft were 42,174:31 (Dkt. 1–4 at 4). In addition, the Auxiliary Power Unit ("APU") listed in the Technical Summary Report had TSLSV and CSLSV values of 658 and 441 (Dkt. 1–3 at 10), but the actual APU had TSLSV and CSLSV values of 4,122:15 and 2,723 (Dkt. 1–4 at 5). In other words, the exhibits attached to the complaint support the allegations in the complaint that the Aircraft did not conform to the technical specifications annexed to the Purchase Contract as required. *See Austrian Airlines Oesterreichische Luftverkehrs AG*, 567 F.Supp.2d at 592.

Therefore, the Court finds that Defendant's rejection of the Aircraft was proper pursuant to New York's "perfect tender" rule, and as Defendant's rejection of a nonconforming good does not support a claim of bad faith, Plaintiff's complaint alleging a breach of contract claim is dismissed.

### CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings (Dkt. 30) is granted and the complaint (Dkt. 1) is dismissed. All other pending motions (Dkt. 39; Dkt. 47; Dkt. 57) are denied as moot.

SO ORDERED.